**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 22, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

WENDY L. TAYLOR,

　　　　Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

　　　　Defendant-Appellee.

No. 07-4165
(D.C. No. 2:06-CV-908-DAK)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **BALDOCK**, and **LUCERO**, Circuit Judges.

---

　　　　Plaintiff Wendy Taylor appeals from a district court order affirming the

Commissioner's decision denying her application for Social Security Disability

benefits. She applied for benefits in January 2004, claiming an inability to work

since June 2002 due to severe lower-back, hip, and joint pain caused by

---

[*]　　　After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

degenerative disc disease and osteoporosis. The Social Security Administration denied her application initially and on reconsideration, but granted Ms. Taylor's request for a de novo hearing before an administrative law judge ("ALJ"), which took place on January 30, 2006.

The ALJ concluded that Ms. Taylor was not disabled within the meaning of the Social Security Act. Although he found that she suffered from degenerative disc disease of the lumbar spine, which he concluded was a severe impairment, he nonetheless determined that she retained the residual functional capacity ("RFC") to perform the full range of light and sedentary unskilled work with some important limitations, which we discuss below. On appeal, Ms. Taylor argues the ALJ did not apply the correct legal standards in analyzing the opinions of her orthopedic surgeon, Dr. Leslie Harris. Had the ALJ given proper weight to Dr. Harris's opinion regarding her functional limitations, she argues, he would have concluded that Ms. Taylor is completely disabled. She also accuses the ALJ of relying too heavily on his own observations during the hearing and argues generally that the ALJ's RFC determination was not supported by substantial evidence.

We have jurisdiction over this appeal under 42 U.S.C. § 405(g). Because we conclude the ALJ applied the correct legal standards in evaluating the medical evidence and that substantial evidence supports his decision, we AFFIRM.

## I. Background

### A. *Medical Evidence*

Because Ms. Taylor argues that the ALJ's RFC assessment is unsupported by medical evidence, we discuss the medical records relating to her back condition in some detail. The record reveals that she began experiencing back pain sometime in 2002 after she left a desk job and began working at the customer service deli department at Wal-Mart. Her family doctor, Robert Williams, referred her to a sports medicine doctor, Paul Pilgram, who diagnosed "Grade II spondylolisthesis at L5-S1 with secondary spinal stenosis," "disc herniation at T10-T11 with mild cord compression," and "disc bulge L4-5 without thecal sac compression." App. at 117.

In October 2002, Dr. Pilgram referred Ms. Taylor to Dr. Harris, an orthopedic surgeon. Since extensive conservative treatment had failed to alleviate Ms. Taylor's back pain, Dr. Harris recommended surgery, and on May 19, 2003, he performed an L4-L5 and L5-S1 decompression and fusion. Ms. Taylor reported having some pain immediately after the surgery, but by July 18, 2003, Dr. Harris's notes indicate that she was "actually doing quite well." *Id.* at 164. By September, he reported that her back was non-tender, and straight leg raising tests were negative. By November 2003, however, Ms. Taylor's pain had resurfaced. Dr. Harris's notes indicate that she was doing "reasonably well," but that she was experiencing "occasional soreness in her back" and "poor sitting

tolerance" plus "occasional numbness and tingling in her feet." *Id.* On examination, her back was tender over the sacral screw areas bilaterally and x-rays revealed that "[t]he left pedicle screw bar . . . appear[ed] prominent distally." *Id.* Dr. Harris advised Ms. Taylor to continue with her medication (Lortab, Soma, and Neurontin) and return in two months for repeat x-rays.

Over the next six months, Ms. Taylor's back pain persisted. She did, however, experience some relief with medication, particularly injections, and she lost weight because she was able to exercise on a treadmill. On May 4, 2004, five months after she filed her disability application, she was examined by Dr. Brian Staley, an agency consulting physician. She reported to Dr. Staley that "she continue[d] to have chronic aching back pain which is present all of the time." *Id.* at 142. But she also told him that she could perform her own activities of daily living without assistance; that she could do the dishes; lift and carry approximately 20 pounds; climb a flight of stairs; and drive a car. She said that she could not, however, vacuum, sweep, or mop; sit for more than 20 minutes at a time; stand for more than 60 minutes; or carry laundry up a flight of stairs.

Dr. Staley observed that Ms. Taylor was "in no acute distress" and was "using no supportive devices to ambulate." *Id.* at 143. His musculoskeletal exam revealed "2+ tenderness to palpation of the left SI joint area, but . . . no apparent tenderness in the vertebrae [and] [n]o muscle spasms." *Id.* at 144. He also noted that she had "mild difficulty" negotiating the exam table and that despite her

ability to sit for 20-30 minutes, "she appeared to be somewhat uncomfortable." *Id.* Ultimately, Dr. Staley concluded that Ms. Taylor had "put forth a good effort on the exam." *Id.* at 145. He indicated he would need her bone scan results and recent x-rays to fully understand the current state of her lower back, including the effects of osteoporosis. His general impression was as follows:

> She does appear to have pain to palpation of the left SI joint area. She seemed uncomfortable while sitting. She has good [range of motion] in her spine, and there is no evidence of nerve root impingement. She is steady on her feet, and she does not require a supportive device to ambulate.

*Id.* He further noted that he did not detect any strength deficits. He did not, however, offer an opinion regarding the functional limitations imposed by Ms. Taylor's impairments.

Two weeks later on May 19, 2004, another agency consulting physician, Dr. Burrows, completed an RFC questionnaire based on his review of the medical records. His most notable conclusion was that Ms. Taylor could stand, walk, and/or sit for a total of six hours in an eight-hour work day. He also noted that "[t]he severity or duration of [her] symptom(s), in [his] judgment, [was] disproportionate to the expected severity or expected duration on the basis of [Ms. Taylor's] medically determinable impairment(s)." *Id.* at 151. This opinion conflicts directly with a subsequent opinion of Dr. Harris. In a June 8, 2004, letter, Dr. Harris stated that Ms. Taylor "ha[d] been unable to work for the past 11 months and most likely [would] be unable to work for the next year." *Id.* at 160.

-5-

As a basis for this conclusion, he cited the persistent back pain that she experienced "about the sacral screws" implanted during her surgery, noting that she could not "tolerate sitting for more than 15 or 20 minutes at a time." *Id.* He opined that she likely would need a second surgery to remove the hardware. *Id.*

Dr. Harris expounded upon this opinion in an October 7, 2004, RFC questionnaire. There he indicated that Ms. Taylor could sit and stand for only 30 minutes at a time for a total of two hours each in an eight-hour work day. Moreover, he indicated that she would need to lie down or sit in a recliner for two hours a day and likely would be absent from work three or four times a month due to her impairments. Dr. Harris further concluded, in direct conflict with Dr. Burrows, that Ms. Taylor's "impairments . . . [were] reasonably consistent with the symptoms and functional limitations described in [his] evaluation." *Id.* at 171.

There is no evidence that Dr. Harris actually examined Ms. Taylor between July 2004 and May 2005. However, on May 5, 2005, he performed a second surgery to remove the hardware in her back. The reports following this second surgery mimic those from before. Ms. Taylor continued to experience some back pain, particularly with prolonged sitting, but the pain was alleviated to some degree with local injections. The record contains a second RFC questionnaire from Dr. Harris dated January 6, 2006, bearing the same conclusions that he reached in October 2004. He again stated that Ms. Taylor would need to lie down

or recline for two hours in an eight-hour work day and that she could sit and stand or walk for only 30 minutes at a time. In this second questionnaire, however, Dr. Harris opined that Ms. Taylor had the ability to sit and to stand or walk for a total of four hours each in an eight-hour work day, as compared to the two-hour limitation that he imposed before.

## B. *The ALJ's Decision*

The ALJ concluded at step four of the sequential evaluation process, *see Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988), that the medical evidence did not support a finding of disability, particularly in light of Ms. Taylor's testimony and demeanor at the hearing. Most importantly, with respect to this appeal, the ALJ concluded that Dr. Harris's opinion was not worthy of controlling weight. More specifically, he accepted his opinion concerning "the medical issues relating to the nature and severity of the claimant's impairments" but not his opinion concerning Ms. Taylor's residual functional capacity or ability to work, matters that the ALJ noted were expressly reserved to the Commissioner. App. at 32. He went on to state: "Dr. Harris' statements have been carefully considered but are not given 'controlling weight' as they indicate extreme limitations that are unsupported by objective evidence and inconsistent with the claimant's activities of daily living." *Id*.

The ALJ concluded that Ms. Taylor's activities of daily living were not significantly restricted as a result of her back condition. Referring to

Ms. Taylor's testimony, the ALJ noted that she was able to travel for relatively long periods of time without lying down and that she was able to do light housework, tend to her personal needs, attend church, and prepare church lessons. The ALJ further found, based on the hearing testimony, that the side effects of Ms. Taylor's medication were not so disruptive as to prevent her from performing work activities in any significant manner. Finally, he found that Ms. Taylor "betrayed no real evidence of pain or discomfort while testifying at the hearing." *Id.* In this regard, he noted that Ms. Taylor declined the opportunity to stand during her testimony and instead sat for about one hour without a break.

Based on the medical and non-medical evidence, the ALJ concluded that Ms. Taylor had the RFC to perform the full range of light and sedentary unskilled work, with several important limitations. As relevant here, those limitations included a prohibition on jobs requiring the following: (i) standing or walking more than 45 minutes at a time, or more than six hours in an eight-hour workday; (ii) sitting more than 45 minutes at a time, or more than six hours in an eight-hour workday; and (iii) sitting, standing, or walking more than 15-20 minutes at a time. The ALJ referred to this third limitation as a "sit/stand option," which, he held, must be available to Ms. Taylor "on bad days." *Id.* at 30.

## II. Discussion

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the

correct legal standards were applied." *Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). We consider substantial evidence to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted). Evidence is not substantial "if it is overwhelmed by other evidence in the record," and a decision cannot be upheld if "there is a mere scintilla of evidence supporting it." *Id.* (quotation omitted). We have also held that "[t]he agency's failure to apply correct legal standards, or show us it has done so, is . . . grounds for reversal." *Id.* Finally, it is not this court's job to reweigh the evidence or substitute our discretion for that of the Commissioner. Our task is simply to review the Commissioner's legal analysis and examine the record to ensure that the evidence supporting the agency's decision is substantial. *See id.*

Ms. Taylor focuses her appeal primarily on the ALJ's refusal to give controlling weight to the opinion of her orthopedic surgeon regarding her functional limitations. She also argues, however, that as a result of this decision, the ALJ ultimately formulated an RFC that was not supported by substantial medical evidence. Finally, she claims the ALJ placed too much significance on her demeanor and apparent lack of pain at the hearing. We address each of these arguments in turn.

*A. Treating Physician Rule*

Generally, the "treating physician rule" requires the ALJ to give greater weight to the opinions of doctors who have treated the claimant than those who have not. *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). Moreover, we have held that "[t]he ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin*, 365 F.3d at 1215. If either of these requirements is not met, the ALJ is not required to give the opinion controlling weight but he must still decide whether to reject the opinion altogether or assign it some lesser weight. *Pisciotta*, 500 F.3d at 1077. If he rejects it, the ALJ "must articulate specific, legitimate reasons for his decision." *Hamlin*, 365 F.3d at 1215 (quotation omitted). And if he merely assigns it a lesser weight, the ALJ must consider specific regulatory factors in doing so. These include,

> the length and nature of the treatment relationship, frequency of examinations, the degree to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, and whether the opinion is that of a specialist.

*Id.* n.7; *see also* 20 C.F.R. § 404.1527(d)(2)-(6).

The ALJ complied with the above requirements in this case. First, he did not reject the opinion altogether. In fact, he accepted completely Dr. Harris's medical diagnoses and his opinion concerning the severity of Ms. Taylor's

condition. His RFC determination also incorporated the "sit/stand option," which further narrowed the acceptable pool of "light work" jobs to those jobs that would permit Ms. Taylor to sit and stand at will. This is consistent with Dr. Harris's most recent opinion that Ms. Taylor can only sit, stand, or walk for 30 minutes at a time. The ALJ also explained that he could not accept Dr. Harris's "extreme limitations," presumably the need to lie down and be absent from work, because they were "unsupported by objective evidence and inconsistent with the claimant's activities of daily living." App. at 32. Support for these conclusions can be found earlier in his opinion where he discussed Ms. Taylor's long car trips; her ability to do light housekeeping, attend church, and prepare church lessons; and the fact that her level of pain fluctuates daily. *See id.* at 31-32. The ALJ also relied on medical evidence, including Dr. Staley's report that Ms. Taylor had "good range of motion in her spine, . . . no evidence of nerve root impingement and [her] strength was within normal limits." *Id.* at 28. He also noted that Ms. Taylor's pain was relieved somewhat by injections and that she apparently did not see Dr. Harris at all from July 2004 to May 2005.

We do not mean to imply this was a clear-cut case. Ms. Taylor certainly adduced evidence consistent with Dr. Harris's functional limitations, including her own testimony concerning her level of pain. And as she points out, Dr. Staley's report was not exactly rosy. He did note that she "had mild difficulty getting up onto and down from the exam table," and that "she appeared to be

somewhat uncomfortable" during the 20 to 30 minutes that it took to discuss her medical history. *Id.* at 144. The record also reveals consistent complaints of pain to Dr. Harris following both surgeries. But it is not the province of this court to reweigh the evidence. "We review only the *sufficiency* of the evidence, not its weight . . . ." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007). In keeping with this task, we conclude that the ALJ relied on sufficient evidence in rejecting Dr. Harris's opinion concerning Ms. Taylor's functional limitations. *See Pisciotta*, 500 F.3d at 1080 (holding that substantial evidence supported ALJ's treatment of treating physician's opinion).

His decision was also "sufficiently specific to make clear to [us] the weight [he] gave to [Dr. Harris's] medical opinion and the reasons for that weight." *Oldham*, 509 F.3d at 1258 (quotation omitted). Moreover, we are satisfied that the ALJ relied on the relevant factors even if he did not specifically discuss them. *See id.* (explaining that explicit discussion of all the § 404.1527(d) factors is not a prerequisite to meaningful review). In short, this case is not like those cited by Ms. Taylor, involving a wholesale failure on the part of the ALJ to give any reasons for his decision. *Cf. Hamlin*, 365 F.3d at 1217 (noting that ALJ "failed to provide any sufficiently specific reasons as to why he was rejecting [treating physician's] opinion"); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (remanding where ALJ "offered no explanation for the weight, if any, he gave to the opinion of [claimant's] treating physician").

*B.  The RFC Determination*

This same reasoning convinces us that the ALJ's RFC determination was supported by substantial evidence.  He concluded that Ms. Taylor could work in a job that generally required her to stand or walk no more than 45 minutes at one time for no more than a total of six hours a day.  And he placed the same limitation on the requirements as to sitting.  These finding are not vastly divergent from those of Dr. Harris, who opined that Ms. Taylor could sit, stand, and walk for up to 30 minutes at a time for a total of 4 hours a day.  Moreover, with the "sit/stand option," the ALJ made explicit his expectation that Ms. Taylor would have days of extremely limited sitting tolerance.  This RFC assessment is fully consistent with the medical evidence in the record, much of which is summarized above, as well as Ms. Taylor's own description of her lifestyle.  We therefore reject this challenge to the ALJ's opinion.

*C.  The ALJ's Observations As Evidence*

Finally, Ms. Taylor claims the ALJ erred in relying on her apparent comfort at the hearing to bolster his credibility findings.  This argument is without merit.  "Although an ALJ may not rely solely on his personal observations to discredit a plaintiff's allegations, he may consider his personal observations in his overall evaluation of the claimant's credibility."  *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).  The ALJ specifically explained that his decision was not based solely on Ms. Taylor's demeanor at the hearing:

> While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of pain on a day to day basis, the apparent lack of discomfort during the hearing is given *some* weight in reaching the conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity.

App. at 32 (emphasis added). Even without the prefatory remark, the ALJ's opinion, considered as a whole, makes clear that he relied on more than his own observations in concluding that Ms. Taylor is not disabled. He acted well within his discretion in considering Ms. Taylor's demeanor, particularly in light of her claim that she cannot sit comfortably for more than 15 to 20 minutes at a time. In sum, "the ALJ properly considered his personal observations of plaintiff as part of his overall assessment of plaintiff's credibility." *Qualls*, 206 F.3d at 1373.

## III. Conclusion

For the foregoing reasons, the judgment of the district court affirming the Commissioner's denial of benefits is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge