FILED
United States Court of Appeals
Tenth Circuit

April 15, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CAROLYN L. LAUXMAN,

  Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration,

  Defendant-Appellee.

No. 08-6177
(D.C. No. 5:07-CV-00509-D)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

---

Claimant Carolyn L. Lauxman appeals from the district court's order

affirming the Commissioner's denial of disability insurance benefits and

supplemental security income. We have jurisdiction under 42 U.S.C. § 405(g)

and 28 U.S.C. § 1291, and we affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Ms. Lauxman alleged she became disabled on September 30, 2001, due to bilateral carpal tunnel syndrome, osteoarthritis of her left wrist, and patellofemoral syndrome of her right knee. An administrative law judge (ALJ) held a hearing and concluded at step four of the five-step sequential evaluation process, *see* 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (explaining the five-step process), that Ms. Lauxman was not disabled because she retained the residual functional capacity (RFC) to perform her relevant past work. Alternatively, the ALJ determined at step five that there was other work she could perform. The Appeals Council denied review and the district court affirmed the ALJ's decision. Ms. Lauxman now appeals, claiming the ALJ (1) failed to properly evaluate the opinion of her non-treating, consultative physician; and (2) improperly omitted manipulative limitations from his RFC assessment.[1]

We review the Commissioner's decision to discern whether the correct legal standards were applied and whether the decision is supported by substantial evidence. *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007). "The agency's failure to apply correct legal standards, or show us it has done so, is . . .

---

[1] The Commissioner responds in part by disputing the magistrate judge's finding that the ALJ effected a de facto reopening of Ms. Lauxman's prior applications by considering evidence from those periods. Ms. Lauxman has not sought to reopen her previous claims, the ALJ found no reason to reopen her previous claims, and in any event, we have rejected similar arguments, *see Hamlin v. Barnhart*, 365 F.3d 1214, 1215-16 n.8 (10th Cir. 2004).

grounds for reversal." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted). Nevertheless, we neither reweigh the evidence nor retry the case, but "examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

Ms. Lauxman first contends the ALJ improperly evaluated the opinion of her non-treating, consultative physician, Dr. Pedro Murati. Dr. Murati examined Ms. Lauxman's hands and noted permanent restrictions on lifting, carrying, pushing, or pulling more than twenty pounds. He believed she could lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently, but could not climb ladders or use hooks, knives, or vibratory tools. Dr. Murati also believed that she could perform occasional repetitive grasping and grabbing but no heavy grasping. The ALJ acknowledged these restrictions without assigning any specific weight to the opinion, and assessed an RFC with greater exertional limits. Ms. Lauxman argues that the ALJ was obligated to provide specific, legitimate reasons for rejecting Dr. Murati's opinion, and that his failure to specify what weight he accorded the opinion or discuss the factors he considered in weighing it constitutes reversible error.

Ms. Lauxman is correct that an ALJ must consider the opinion of every medical source and provide specific, legitimate reasons for rejecting it. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003); *see also* SSR 96-5p, 1996 WL

-3-

374183, at *1 ("opinions from any medical source about issues reserved to the Commissioner must never be ignored"). She is also correct that when deciding what weight to assign to an opinion, an ALJ must consider the factors set forth at 20 C.F.R. §§ 404.1527(d) and 416.927(d).[2] But we disagree with her underlying assumption that the ALJ rejected Dr. Murati's opinion. There is no indication that the opinion was rejected, nor is there any indication that the ALJ weighed it unfavorably; instead, the ALJ assessed an RFC that allowed for greater exertional limitations as reflected by other evidence. "When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). Here, since the ALJ neither rejected Dr. Murati's opinion nor treated it unfavorably, there was no need to provide specific reasons for doing so.

Nevertheless, the ALJ was still obligated to consider the factors of §§ 404.1527(d) and 416.927(d). Yet contrary to Ms. Lauxman's contention, his failure to "explicitly discuss all the factors . . . does not prevent this court from according his decision meaningful review." *See Oldham*, 509 F.3d at 1258 (declining to require an ALJ to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion"). Indeed, we previously have

---

[2]     These factors include "the length and nature of the treatment relationship, frequency of examinations, the degree to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, and whether the opinion is that of a specialist." *Hamlin*, 365 F.3d at 1215 n.7.

determined that an ALJ's rejection of a non-treating physician's opinion adequately demonstrated his consideration of the opinion's consistency with other evidence in the record. *See Doyal*, 331 F.3d at 764. The ALJ in this case clearly considered Dr. Murati's opinion because he recited each and every restriction. And his formulation of an RFC that generally is consonant with the doctor's opinion yet reflective of other evidence demonstrates that he analyzed the opinion's consistency with all the evidence. Of course, it would have been helpful if the ALJ had elaborated on his treatment of Dr. Murati's opinion, but under these circumstances, the ALJ's decision is adequate for purposes of our review. To the extent Ms. Lauxman suggests that Dr. Murati's opinion was entitled to controlling weight, the regulations provide that an ALJ will generally give more weight to the opinion of a treating source than to the opinion of a non-treating source. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). Dr. Murati's status as a non-treating, consultative physician did not entitle his opinion to controlling weight, especially given that Mr. Lauxman's surgeon believed, as we shall discuss, that she could perform light to medium work.

Next, Ms. Lauxman challenges the ALJ's RFC assessment, claiming that it fails to account for the arthritis and carpal tunnel syndrome in her left hand and wrist, which produce tenderness, reduced grip strength, and a decreased range of motion. The ALJ determined that Ms. Lauxman retained the RFC to lift, carry,

push, and pull fifty pounds occasionally or twenty-five pounds frequently, and to stand, walk, or sit for about six hours in an eight-hour workday. He found no postural, visual, or communicative limitations and ultimately concluded that she could perform medium work. Ms. Lauxman asserts this RFC should have included manipulative limitations. We conclude that the ALJ's RFC assessment is supported by substantial evidence.

Ms. Lauxman fractured her left wrist when she was young and suffered from carpal tunnel syndrome in her left wrist as early as 1999. In March 2002, she underwent a nerve conduction study that suggested "a borderline left median neuropathy at the level of the wrist." Aplt. App., Vol. II at 253. Her treating physician, Dr. J. Mark Melhorn, believed at that time that she could perform "a light[-]medium work task rotation," despite concerns that she would lose her worker's compensation. *Id.* at 218. Dr. Melhorn later performed surgery on Ms. Lauxman's left wrist for carpal tunnel release and afterwards again suggested that she return to "a light to medium work pattern gradually increasing to a post operative period." *Id.* at 214A.

Approximately one year after the surgery, however, Ms. Lauxman complained to Dr. Michael Peterson of pain in her left wrist and right knee. Dr. Peterson confirmed that Ms. Lauxman was experiencing pain in her left hand and wrist from her surgery, but he discerned "[n]o significant loss of motor or sensory function." *Id.*, Vol. III at 467. Instead, he found that her "[g]rip strength

in the right hand measure[d] 55 pounds and in the left hand 35 pounds on successive trials." *Id.* at 466. He also reported that she could "perform rapid alternating movements in both upper extremities easily and [could] perform fine motor movements in both hands rapidly and accurately." *Id.* Subsequent x-rays interpreted by Dr. Henry Biermann revealed an "old non-united fracture" in her left wrist, which he described as a "wrist full of carpal arthritis." *Id.* at 476. Dr. Biermann recommended that Ms. Lauxman "stay on ibuprofen 800 mg," and, "[w]hen she gets money, . . . to see a wrist surgeon about a probable effusion of the wrist." *Id.*

Thereafter, the record is silent with regard to Ms. Lauxman's hand and wrist until July 2005, when she experienced cramping and reduced grip strength in her left hand. Then in September 2005, she was involved in a car accident. The day after the accident, Dr. Philip Self examined Ms. Lauxman and noted that although her left wrist had a diminished range of motion from "arthritic changes[,] . . . overall, [her] extremities [were] without any gross deformities." *Id.* at 518. Another examination performed by Dr. Dennis Brennan in November 2005, similarly indicated that her "[e]xtremities [were] symmetrical and without evidence of overt deformity." *Id.* at 520. But Dr. Brennan also determined that her [g]rip strength [was] 5/5 bilaterally," as was her upper and lower extremity strength, and that she had full range of motion in both hands and wrists. *Id.* Additionally, Dr. Brennan found that Ms. Lauxman could effectively oppose her

thumb to her finger tips, manipulate small objects, and grasp tools. Hence, Dr. Brennan concluded that Ms. Lauxman had normal hand skills.

By the end of January 2006, an agency physician who had reviewed Ms. Lauxman's medical records determined that she possessed the ability to perform the full range of medium work. The doctor found that despite swelling in her thumb joint, arthritis, and carpal tunnel syndrome, Ms. Lauxman achieved full range of motion in all joints. The doctor also determined that her grip strength was 5/5, her upper and lower strength was 5/5 bilaterally, and that she had no manipulative limitations.

This evidence supports the ALJ's RFC assessment. Although there was evidence reflecting Ms. Lauxman's pain and discomfort, substantial evidence demonstrates that in the years since her surgery, Ms. Lauxman gradually recovered normal grip strength and the full range of motion in her left hand and wrist. Consequently, the ALJ was justified in omitting manipulative limitations from his RFC finding. Any lingering doubt as to whether Ms. Lauxman had manipulative limitations and, if so, the extent to which they impacted her ability to work, necessarily requires a reweighing of the evidence, which we cannot do, *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

The judgment of the district court is AFFIRMED.

Entered for the Court


John C. Porfilio
Circuit Judge