FILED
United States Court of Appeals
Tenth Circuit

June 16, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JOHN C. ARMIJO,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

        Defendant-Appellee.

No. 09-1305
(D.C. No. 1:08-CV-02150-CMA)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **BALDOCK**, and **TACHA**, Circuit Judges.

      John C. Armijo appeals the district court's affirmance of the Commissioner

of Social Security's denial of disability benefits. Exercising jurisdiction under

28 U.S.C. § 1291 and  42 U.S.C. § 405(g), we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

In his application for disability benefits, Mr. Armijo alleged an onset date of November 25, 2005. He based his claim on back and leg pain stemming from a work-related injury he sustained in 1990. He received a 44% impairment rating shortly after that injury but continued to work until 2003 as a concrete form setter and then a carpenter. Both jobs involved lifting more than 100 pounds on a frequent basis. From June 2005 until his onset date, Mr. Armijo was employed as a maintenance worker, a job that required frequent lifting of 20 pounds. He stated that his final employer knew how bad his back was, but he believed that a DUI conviction "opened the door for them to let me go." Aplt. App., Vol. II at 26.

After initial denials of his application, Mr. Armijo testified at a hearing before an Administrative Law Judge (ALJ), who issued a written decision on January 24, 2008. The ALJ applied the familiar five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a). At the first step, the ALJ determined that Mr. Armijo had not engaged in substantial gainful activity since his onset date. At step two, the ALJ found that Mr. Armijo had one severe impairment, degenerative disc disease of the lumbar spine, but that it was not of listing-level severity for step-three purposes. The ALJ also noted that Mr. Armijo had depression, but observed that it was controlled by medication and therefore did "not impose more than a minimal effect on [his] ability to perform basic work activities and is thus not a 'severe' impairment." Aplt. App., Vol. II at 14. The

ALJ further considered Mr. Armijo's cocaine and alcohol abuse and repaired right-hand fracture, but concluded they were not severe impairments.

The ALJ then determined at step four that Mr. Armijo retained the residual functional capacity (RFC) to perform light work; he could "lift and carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight-hour workday; stand/walk for six hours in an eight-hour workday; and occasionally climb, balance, stoop, kneel, crouch and crawl." *Id.* at 15. In reaching this finding, the ALJ afforded little weight to the greater limitations described in a disability report prepared by Mr. Armijo's treating physician, David Yamamoto, M.D., after an October 12, 2007 examination. Based on this RFC, the ALJ determined that Mr. Armijo was unable to return to his past relevant work.[1]

Finally, at step five, the ALJ noted that because Mr. Armijo had nonexertional limitations, the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), could only be used as a framework for the

---

[1]    In formulating his RFC finding, the ALJ provided a number of reasons for finding that Mr. Armijo was not entirely credible concerning the intensity, persistence, and limiting effects of his symptoms: the apparent lack of treatment during an eleven-month period after his onset date; his significant activities of daily living and regular reports of pain relief with treatment; the lack of medical evidence to support his claims of leg pain; the lack of severity in his diagnoses of sacroiliac strain and lower back pain; the fact that clinical exams did not demonstrate any neurological deficits; and Mr. Armijo's admission that he was fired from his last job because of his DUI conviction. Mr. Armijo has not challenged the ALJ's adverse credibility finding on appeal.

disability determination, not as a directive. Taking account of Mr. Armijo's combination of age (49), tenth-grade education, and work experience (unskilled), and finding that his nonexertional limitations had little or no effect on the occupational base of unskilled light work, the ALJ determined that a finding of "not disabled" was appropriate under Rule 202.17 of the grids.

Mr. Armijo appealed to the Appeals Council and submitted several pieces of new evidence. The Appeals Council considered this evidence but denied review, concluding that it did "not establish greater work restrictions than found in the hearing decision." Aplt. App., Vol. II at 1. The Council also rejected the argument that the ALJ did not give adequate weight to Dr. Yamamoto's 2007 disability report. Mr. Armijo unsuccessfully appealed to the district court, and this appeal followed.

## Discussion

On appeal, Mr. Armijo raises four issues, which we consider in order of analytical convenience: (1) the ALJ failed to evaluate his depression according to the special technique described in 20 C.F.R. § 404.1520a; (2) the ALJ gave improper weight to Dr. Yamamoto's 2007 disability report; (3) the ALJ erred in relying on the grids because the evidence showed Mr. Armijo had significant nonexertional impairments; and (4) the Appeals Council should have reviewed the ALJ's decision in view of the additional evidence he submitted to it. Our task is to review "the Commissioner's decision to determine whether the factual findings

are supported by substantial evidence in the record and whether the correct legal standards were applied." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## A. The ALJ's evaluation of Mr. Armijo's depression

Mr. Armijo contends that the ALJ committed an error at step two in not evaluating his depression using the special technique of 20 C.F.R. § 404.1520a, claiming that failure affected the ALJ's RFC finding and application of the grids. The Commissioner concedes the error but argues it was harmless. We agree. Under the regulation, when a claimant has a medically determinable mental impairment, it must be evaluated by rating the degree of functional limitation in four broad functional areas: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). After rating the degree of functional limitation in each area, the factfinder then determines the severity of the mental impairment. *Id.* § 404.1520a(d).[2] At the ALJ-hearing level, the ALJ must document application of the technique in the written decision. *Id.* § 404.1520a(e).

---

[2]    We pause to note that in analyzing the regulation, the district court erroneously concluded that the ALJ was not obligated to rate the degree of functional limitation because he concluded Mr. Armijo's depression was not severe. *See* Aplt. App., Vol. I at 48-49 (Dist. Ct. Order at 13-14). But as is plain from the regulation, rating the degree of functional limitation in each functional area is the means of determining whether a claimant's mental impairment is severe. *See* 20 C.F.R. § 404.1520a(d).

Here, the ALJ did not cite to the regulation, let alone document its special technique in his decision. Instead, the ALJ merely observed that Mr. Armijo's depression was controlled by medication and therefore did "not impose more than a minimal effect on [his] ability to perform basic work activities and is thus not a 'severe' impairment." Aplt. App., Vol. II at 14. Given the state of the record before the ALJ,[3] it is commendable that the ALJ even took note of Mr. Armijo's depression. Mr. Armijo did not advance depression as a basis for his disability claim; he wholly omitted it from his application and other filings except for one reference in his request for an ALJ hearing, where he listed an antidepressant among his medications. Indeed, it was not until after the ALJ's adverse decision that Mr. Armijo took the position that his depression was a factor in the disability calculus. Moreover, Mr. Armijo never complained to his doctors that his depression was causing problems. The record reflects only that Dr. Yamamoto prescribed Lexapro for Mr. Armijo on a number of occasions and that it helped with his depression. Significantly, nowhere in his medical records does Dr. Yamamoto observe any mental problems or memory limitations attributable to depression; to the contrary, in his 2007 disability report, on which Mr. Armijo

---

[3]     In determining whether the ALJ's failure to apply the special technique was harmless error, we do not take into account the evidence Mr. Armijo submitted to the Appeals Council, as he implies we should. That evidence was not before the ALJ at the time of his decision, and whether the ALJ erred with respect to the special technique is a legal question, not one of substantial evidence. Whether substantial evidence supports the ALJ's decision in view of the evidence he submitted to the Appeals Council is a separate issue discussed below.

relies with regard to his back pain, Dr. Yamamoto stated that Mr. Armijo "does not appear to have memory problems, mental or sensory limitations," *id.* at 199.

Although the ALJ's failure to apply the special technique was error, it was harmless. We may apply harmless error in the social security context "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).[4] Because there was nothing in the record before the ALJ to suggest that Mr. Armijo's depression caused functional limitations in any of the four broad functional areas, we can say with confidence that no reasonable administrative factfinder, applying the special technique of § 404.1520a, could have reached any finding other than that Mr. Armijo's depression had only minimal effect on his ability to perform basic work activities. Accordingly, the ALJ's RFC finding was sound, and his failure to apply the special technique did not affect his reliance on the grids (discussed more fully below).

---

[4] The Commissioner urges us to apply a different harmless-error standard, one drawn from outside of the social-security context, where an error is harmless "'unless it had a substantial influence on the outcome.'" Aplee. Br. at 15 (quoting *United States v. Wacker*, 72 F.3d 1453, 1473 (10th Cir. 1995)). We are not at liberty to deviate from *Allen*'s controlling formulation of the harmless-error standard to be used in social-security cases. *See Mendiola v. Holder*, 585 F.3d 1303, 1310 (10th Cir. 2009) ("We may not overrule another panel of this court.").

**B. Weight given to Dr. Yamamoto's opinion**

In his 2007 disability report, Dr. Yamamoto offered his opinion as to

Mr. Armijo's functional capacity, which the ALJ summarized:

> [Mr. Armijo] can lift up to 10 pounds for 10 minutes an hour; can
> carry eight pounds for 10 to 15 minutes an hour; can sit for 30 to 60
> minutes at a time and a total of three hours in an eight-hour workday;
> can stand for 30 minutes at a time and a total of two hours in an
> eight-hour workday; can walk for 15 to 20 minutes at a time and a
> total of two hours in an eight-hour workday; must change positions
> every 20 to 30 minutes; must spend one hour lying down during an
> eight-hour workday; can perform grasping and fine manipulation
> with the bilateral upper extremities for 10 to 15 minutes per hour;
> can use the bilateral feet to operate foot controls for 10 to 15 minutes
> an hour; cannot climb, kneel or crawl; can occasionally balance,
> stoop and crouch; can occasionally reach, handle and finger; can
> frequently perform feeling; has limitations of his ability to work at
> heights and around moving machinery; cannot tolerate concentrated
> exposure to extremes of temperature or fumes; can tolerate moderate
> exposure to vibrations; would require five-minute breaks every
> 30 minutes; would be absent from work three to five days a month;
> and has fatigue that limits his ability to adapt to stress and to
> concentrate.

Aplt. App., Vol. II at 17-18 (citation omitted). The ALJ found Dr. Yamamoto's

opinion "largely unpersuasive and accord[ed] it little weight." *Id.* at 18. In

support, the ALJ provided many reasons:

> [The opinion's] assertion that the claimant must change positions
> every 20 to 30 minutes is inconsistent with its indication that he can
> sit for 30 to 60 minutes at a time; its limitations on fine manipulation
> are not consistent with its later-stated limitations on fingering and
> feeling and none of those limitations are consistent with the
> claimant's responses in the "Function Report" in exhibit 4E, which
> do not indicate any difficulty with using his hands or reaching; the
> opinion does not explain how the claimant's lower back and leg pain
> limit his ability to perform manipulative activities with his upper

extremities; its limitations on balance are not consistent with the claimant's denial of balance problems at his December 2007 hearing evaluation; its lifting limitations are not consistent with the claimant's own reports of his ability to lift; the opinion is not supported by any documentation of complaints of fatigue in the treatment records; its mental limitations are not supported by any documentation of complaints of poor concentration or stress tolerance in the treatment records, by any objective medical evidence of concentration deficits, or by the claimant's responses in the "Function Report" in exhibit 4E, which do not indicate any difficulty with concentration, following instructions, or handling stress or changes in routine; though the opinion states that the claimant's lifting limitations were measured on October 12, 2007, the treatment note corresponding to that date does not document any measurement or assessment of lifting abilities; to the extent that the opinion relies on the claimant's 1990 impairment rating for support it is unpersuasive because despite that rating, the claimant subsequently performed physically demanding work for several years; and the objective findings Dr. Yamamoto offers in support of the opinion are not consistent with those actually documented in his treatment notes in exhibit 12F. For example, Dr. Yamamoto's treatment notes do not identify any exam findings of "marked" tenderness or muscle spasm. Similarly, though Dr. Yamamoto states in support of his opinion that the March 2007 MRI demonstrated a right lateral disc bulge at L4-5, the treatment records indicate that the MRI revealed only a *possible* "small" herniated nucleus pulposis at L4-5.

*Id.* (citations omitted).

Mr. Armijo first claims the ALJ erred in not first determining whether Dr. Yamamoto's opinion was entitled to controlling weight under 20 C.F.R. § 404.1527(d)(2), which provides that controlling weight is afforded to a treating source's opinion if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." He alternately argues that in finding Dr. Yamamoto's

opinion was entitled to little weight, the ALJ failed to consider the factors set forth in § 404.1527(d), which we have summarized as follows:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (quotation omitted). In support, he argues that "Dr. Yamamoto's treatment notes document findings such as decreased range of motion of the lumbar spine, lumbar and right hip tenderness, and trigger points. He reviewed a lumbar MRI report and a nerve conduction study, which showed evidence of mild right L5 radiculopathy." Aplt. Opening Br. at 36-37 (citations omitted). He also contends that Dr. Yamamoto's findings at the October 12, 2007 disability examination support his opinion in that Dr. Yamamoto found "[Mr.] Armijo had a reduced range of motion of his lumbar spine, was markedly tender over the sacroiliac joints bilaterally, and had tenderness and spasms on his lumbar spine." *Id.* at 37. He further claims that "[c]ontrary to the ALJ's doubts, Dr. Yamamoto actually *measured* [his] limitations." *Id.* This argument is based on a statement in Dr. Yamamoto's report that lifting limitations were "based on testing in my office," Aplt. App., Vol. II at 197, and on Mr. Armijo's hearing testimony that Dr. Yamamoto "had me lifting some light weights, I think it was

10, 15 pounds, had me bending over, checking me and checking my back and measuring my movements," *id.* at 38; *see also id.* at 39 ("he measured me, like I said, and . . . measured my bending and . . . wrote down what he thought"). Mr. Armijo also claims that Dr. Yamamoto's opinion is consistent with "the only other significant evidence of record," a June 2004 evaluation that "showed a positive straight leg raising test on the right at 45 degrees and a diagnosis [of] low back pain with radiculopathy." Aplt. Opening Br. at 38.

Although a somewhat close case, we disagree with Mr. Armijo. First, even though the ALJ did not explicitly state that Dr. Yamamoto's opinion was not entitled to controlling weight, that finding is implicit in his decision to accord little weight to the opinion. A treating physician's medical opinion is entitled to controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). The ALJ detailed the lack of supporting documentation in the record for the type and/or degree of limitations that Dr. Yamamoto advanced. He observed that Dr. Yamamoto's prior treatment notes did not support the degree of limitation in his disability report, and there was no suggestion that Mr. Armijo's condition had deteriorated since his previous visit on September 19, 2007, when Dr. Yamamoto's back exam revealed only that Mr. Armijo's back is "tender, SI joints bilaterally, also midline lumber spine." Aplt. App., Vol. II at 242. *See*

*Castellano v Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (deeming such circumstances proper grounds for rejection of treating physician's opinion). The ALJ also noted particular conflicts between Dr. Yamamoto's opinion and specific record evidence, and pointed to internal inconsistencies in Dr. Yamamoto's opinion. In addition, we are not persuaded by Mr. Armijo's argument that Dr. Yamamoto's opinion is consistent with "the only other significant evidence of record," Aplt. Opening Br. at 38, his 2004 positive straight-leg raising test and diagnosis of low back pain with radiculopathy. Dr. Yamamoto observed a bilaterally negative test much later, on March 5, 2007, and the issue is not whether Mr. Armijo has low back pain with radiculopathy but the degree to which it affects his ability to work. Accordingly, we conclude that substantial evidence supports the ALJ's implicit determination that the opinion was not entitled to controlling weight.

Next, in determining that Dr. Yamamoto's opinion was only entitled to little weight, the ALJ did not expressly apply each of the six regulatory factors set out in 20 C.F.R. § 404.1527(d). However, we do not require express application of each factor; indeed, not all the factors "will apply in every case." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quotation omitted). We only require the ALJ's decision to "be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300

(quotation omitted).  Put more simply, we only require an ALJ to give "good reasons" for the weight accorded to a treating source's medical opinion.  *Oldham*, 509 F.3d at 1258 (citing 20 C.F.R. § 404.1527(d)(2)).

The ALJ's decision indicates that he considered all the factors, and it contains good reasons for the weight he gave to Dr. Yamamoto's opinion.  It is clear from the ALJ's recitation of the medical evidence generated by Dr. Yamamoto that he was well aware of factors one, two, and five, "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;" and "(5) whether or not the physician is a specialist in the area upon which an opinion is rendered," *Watkins*, 350 F.3d at 1301.  Factors one and two favor Dr. Yamamoto except to the extent the ALJ found fault with his failure to contemporaneously document any measurement or assessment of Mr. Armijo's lifting abilities at the October 12, 2007 examination.  Factor five appears neutral.  Most importantly, the third and fourth factors, "(3) the degree to which the physician's opinion is supported by relevant evidence" and the "(4) consistency between the opinion and the record as a whole," *id.*, had significant bearing on the ALJ's finding, and as discussed above, support the weight the ALJ gave Dr. Yamamoto's opinion.  Regarding the sixth factor, Mr. Armijo has not pointed to, nor have we uncovered, "other factors brought to the ALJ's attention which tend to support or contradict the opinion,"

*id.* For all these reasons, we disagree with Mr. Armijo that the ALJ seized on minor flaws in Dr. Yamamoto's opinion when deciding to accord it little weight. Instead, we conclude that the ALJ considered all the regulatory factors and gave good reasons for assigning little weight to Dr. Yamamoto's opinion.

Mr. Armijo raises one final argument on this point, that the ALJ improperly gave greater weight to the opinion of Denise Eschenbaum, a nonmedical source who reviewed his medical records in August 2006 and found he could perform a full range of light work, than he gave to Dr. Yamamoto's opinion. We disagree with Mr. Armijo's view of the ALJ's reference to Ms. Eschenbaum's opinion. The ALJ noted that his RFC finding was consistent with Ms. Eschenbaum's findings only after performing an exhaustive review of the evidence provided by the medical sources of record and providing good reasons for the weight he assigned to Dr. Yamamoto's opinion. We therefore see nothing improper in the ALJ's observation that his RFC finding correlated with the opinion of a nonmedical source.

### C. The ALJ's reliance on the grids

Mr. Armijo claims it was error for the ALJ to use the grids in determining he was not disabled because there was evidence of significant nonexertional impairments, namely, his depression and the nonexertional impairments noted in Dr. Yamamoto's 2007 disability report, which Mr. Armijo characterizes as "lying down, breaking frequently (5 out of every 30 minutes), and concentrating and

adapting to stress due to back pain," Aplt. Opening Br. at 45. But we have already confirmed that substantial evidence supports the ALJ's findings that (1) Mr. Armijo's depression had little effect on his ability to perform basic work activities and (2) Dr. Yamamoto's opinion was entitled to little weight. Thus, substantial evidence supports the ALJ's finding that Mr. Armijo's nonexertional limitations "have little or no effect on the occupational base of unskilled, light work." Aplt. App., Vol. II at 19. His reliance on the grids, therefore, was proper. *See Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (holding, in relevant part, that "an ALJ may not rely conclusively on the grids unless he finds . . . that the claimant has no significant nonexertional impairment").

### D. Evidence submitted to the Appeals Council

Mr. Armijo's final argument is that the Appeals Council erred in its conclusion that two pieces of aft-submitted evidence did not warrant review of the ALJ's January 24, 2008 decision: (1) a psychological evaluation performed on May 23, 2008, by a licensed psychologist, W.E. Wisner, Ed.D.; and (2) a Physical Residual Functional Capacity Questionnaire completed by Dr. Yamamoto on June 5, 2008. We disagree.

The Appeals Council will review an ALJ's decision only in certain circumstances, including when it receives "new and material evidence . . . relate[d] to the period on or before the date of the [ALJ's] hearing decision" and the Council "finds that the [ALJ's] action, findings, or conclusion is contrary to

the weight of the evidence currently of record." 20 C.F.R. § 404.970(b). When the evidence qualifies and the Appeals Council has considered it, the evidence "becomes part of the record we assess in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). In this case, the Appeals Council indicated that it considered the reports of Drs. Wisner and Yamamoto, implying that the reports qualified as new, material, and chronologically relevant under § 404.970(b). *See Martinez v. Barnhart*, 444 F.3d 1201, 1207 (10th Cir. 2006). But it concluded that "[t]he new evidence does not establish greater work restrictions than found in the [ALJ's] hearing decision." Aplt. App., Vol. II at 1.

As we have previously pointed out, an express analysis by the Appeals Council would aid judicial review, but there is no statutory or regulatory mandate for such an analysis. *Martinez*, 444 F.3d at 1207-08. Because the Appeals Council considered the reports of Drs. Wisner and Yamamoto, we must consider whether substantial evidence supports the ALJ's decision in light of the entire record, including the new evidence. *See id.* at 1208. We conclude that it does.

First, Dr. Wisner "believe[d] it likely that Mr. Armijo has been suffering from a major depressive disorder for the past two to three years. His level of depression is at least moderate and is interfering with his life." Aplt. App., Vol. II at 279. As the Commissioner points out, however, Dr. Wisner's evaluation of Mr. Armijo's condition during the relevant time period is

-16-

retrospective and necessarily based on Mr. Armijo's subjective statements, which included, apparently for the first time, the claim that he felt suicidal on two different antidepressive medications. But Mr. Armijo did not advance depression as a basis for his disability claim or seek treatment for it (other than taking Lexapro, which he reported to Dr. Yamamoto as helpful), and there is nothing in the medical records generated during the period prior to the ALJ's decision that supports Dr. Wisner's opinion regarding the severity of his depression or suggests any limitations on Mr. Armijo's functional capacity. Moreover, the ALJ did not find Mr. Armijo fully credible regarding the limiting effects of his pain, an unchallenged finding that casts a substantial shadow over his post-decisional effort to obtain benefits on the basis of his depression. Therefore, we conclude that even in view of Dr. Wisner's report, substantial evidence supports the ALJ's finding that his depression was not severe and did not have more than a minimal effect on his ability to perform basic work activities.

Second, on his 2008 physical RFC questionnaire, Dr. Yamamoto indicated that Mr. Armijo was subject to limitations equal to or greater than those he described in his 2007 disability report. The new set of limitations are not accompanied by any new supporting evidence, and therefore the opinion is not entitled to any more weight than the little weight the ALJ accorded

Dr. Yamamoto's 2007 report.   Thus, the 2008 RFC questionnaire provides no basis to alter the ALJ's determination that Mr. Armijo is not disabled.

The judgment of the district court is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge