**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 7, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DEE OLDHAM,

      Plaintiff-Appellant,

  v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

      Defendant-Appellee.

No. 07-1087

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 06-cv-595-DME)**

---

Submitted on the briefs:[*]

Michael W. Seckar, Pueblo, Colorado, for Plaintiff-Appellant.

Troy A. Eid, United States Attorney, Kurt J. Bohn, Assistant United States
Attorney, Thomas H. Kraus, Special Assistant United States Attorney, Deana R.
Ertl-Lombardi, Regional Chief Counsel, Yvette G. Keesee, Deputy Regional
Counsel, Social Security Administration, Office of the General Counsel, Denver,
Colorado for Defendant-Appellee.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

Before **HARTZ**, Circuit Judge**, BRORBY**, Senior Circuit Judge, and **TYMKOVICH**, Circuit Judge.

---

**HARTZ**, Circuit Judge.

---

Dee Oldham appeals the decision of the district court affirming the denial by an Administrative Law Judge (ALJ) of her application for disability insurance benefits under Title II of the Social Security Act (Act). Because the decision of the ALJ was supported by substantial evidence and the law was properly applied, we affirm.

**BACKGROUND**

Ms. Oldham claims to have been disabled since February 1995 as a result of reflex sympathetic dystrophy (RSD)[1], seizures, and memory problems. In his

---

[1]   "[RSD] is a chronic pain syndrome most often resulting from trauma to a single extremity. It can also result from diseases, surgery, or injury affecting other parts of the body. Even a minor injury can trigger" RSD. Social Security Ruling 03-2p, *Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome*, 2003 WL 22399117, at *1 (S.S.A. Oct. 20, 2003).

> The most common acute clinical manifestations [of RSD] include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma. Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone. It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual. When left untreated, the signs and symptoms of the disorder may worsen over time.

(continued...)

initial decision the ALJ determined that Ms. Oldham did not have any severe impairments. That determination was reversed by the Appeals Council, which remanded the case for further consideration after stating that "[t]he evidence in the record indicates that the claimant's impairments are severe." A.R. Vol. II at 647. The ALJ interpreted the remand to require him to begin his new analysis at step four of the familiar five-step sequential evaluation process, *see Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007), an analysis that includes a determination of an applicant's residual functional capacity despite the presence of severe impairments, *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996), and that "requires the claimant to show that the impairment or combination of impairments prevents [her] from performing [her] past work," *Lax*, 489 F.3d at 1084 (internal quotation marks omitted). If the claimant satisfies that burden, she is entitled to benefits unless, at step five, the Commissioner establishes "that the claimant retains sufficient [residual functional capacity] to perform work in the national economy, given her age, education, and work experience." *Id*. (internal quotation marks omitted).

_____

[1](...continued)
*Id.* A diagnosis of RSD is based upon "complaints of persistent, intense pain that results in impaired mobility of the affected region," coupled with other complaints, including swelling, "[a]utonomic instability–seen as changes in skin color or texture, changes in sweating (decreased or excessive sweating), skin temperature changes, or abnormal pilomotor erection (gooseflesh)," abnormal hair or nail growth–either too slow or too fast, osteoporosis, or involuntary movements of the affected region. *Id.* at \*2.

The ALJ determined that Ms. Oldham had the residual functional capacity to perform a significant range of light work, that there were a significant number of jobs in the national economy that she could perform, and that she was therefore not disabled under the Act.  His conclusions followed in large part from his assessment of Ms. Oldham's credibility.  He stated:

> Evaluating the extent and nature of the claimant's functional capacity is significantly complicated by extensive and chronic inaccuracies endemic throughout the medical evidence.  The credibility of the claimant is in serious doubt, and uncorroborated medical information, allegations, findings, and conclusions must be weighed in the context of a great body of inconsistent, contradictory, and questionable information throughout the medical record.

A.R. Vol. I at 23.

The district court affirmed the ALJ's decision.  It held that the ALJ had properly treated Ms. Oldham's RSD and mental impairments as severe.  After noting the contradictions in the record regarding the extent of Ms. Oldham's impairments and their effect on her ability to work, it also held that the ALJ had properly addressed the contradictory opinions, "reject[ing] those [residual-functional-capacity] opinions that were based upon Oldham's subjective complaints and test results which Oldham could manipulate because the ALJ did not find Oldham credible." *Id.* at 142.  Because the ALJ's credibility finding was supported by substantial evidence, the court refused to disturb it.

**DISCUSSION**

On appeal to this court, Ms. Oldham argues that the ALJ erred in failing to determine that her RSD constitutes a severe impairment and that she also has severe mental impairments. She further contends that the ALJ failed to weigh properly the relevant medical evidence and failed to consider the opinion of Dr. Madsen, an examining psychologist. Our review is to determine whether the Commissioner applied the correct legal standards and whether his decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

We can easily dispose of Ms. Oldham's first two arguments, which relate to the severity of her impairments. The ALJ, in compliance with the ruling by the Appeals Council, made an explicit finding that Ms. Oldham suffered from severe impairments. That was all the ALJ was required to do in that regard. Ms. Oldham's real complaint is with how the ALJ ruled at step five. But, as correctly noted by the district court, a finding of severe impairments (which is made at step two) does not require the ALJ to find at step five that the claimant did not have the residual functional capacity to do any work. After finding severe impairments, the ALJ still had the task of determining the extent to which those impairments, whether RSD or mental impairments or both, restricted her ability to work.

Ms. Oldham's chief challenge on appeal regards the ALJ's evaluation of the medical evidence. To understand this challenge, we must first consider

-5-

Ms. Oldham's credibility. She does not contest the ALJ's findings that her "allegations, statements and presentations, including those made to treating and examining doctors[,] [were] highly unreliable," A.R. Vol. I at 28, and that her "allegations regarding her limitations [were] not totally credible," *id.* at 44. It would have been futile to do so. Among other evidence inconsistent with her allegation of total disability is the medical record showing that, four years after the claimed onset of her disability, she was treated for possible chest and back injury after bales of hay fell on her while she was feeding some animals. In addition, two videotapes recorded in 2001 by Ms. Oldham's workers-compensation insurer showed her engaging in physical activity far beyond the capacity that she had reported to her various medical providers.

The credibility issue was critical to the determination of disability. After viewing the videotapes her treating psychologist, Dr. Evans, changed his earlier conclusion that Ms. Oldham was "not functional," A.R. Vol. I at 415, to an opinion that Ms. Oldham was consciously maintaining her symptoms, that he doubted the presence of any objective disease process, and that "Ms. Oldham is able to function independently quite nicely, including ambulating with or without her cane," *id.* at 413. The video also changed the opinion of Ms. Oldham's longtime treating physician, Dr. Kinnett, who had previously indicated that she needed a power-scooter wheelchair and that she would be wheelchair bound for life; he no longer believed that she needed a wheelchair. Based on the evidence

indicating Ms. Oldham's propensity to exaggerate her symptoms and manipulate test results, the ALJ refused to credit opinions of treating and examining medical providers that depended on Ms. Oldham's veracity.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (credibility determinations are peculiarly the province of the ALJ and will not be overturned if supported by substantial evidence).  In our view, this refusal was proper.

Ms. Oldham makes several arguments that the refusal was unlawful.  First, she contends that the ALJ did not properly apply Social Security Ruling 03-2p, which addresses RSD.  She complains that the ALJ failed to acknowledge that transient findings are often a characteristic of RSD.  *See* Social Security Ruling 03-2p, *Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome,* 2003 WL 22399117, at *4 (S.S.A. Oct. 20, 2003).  We disagree.  The reason the ALJ discounted Ms. Oldham's claim of disability was her exaggeration of her symptoms and her inconsistent stories to various medical providers, not the ALJ's misapprehension of the nature of RSD.

Second, Ms. Oldham contends that the ALJ did not properly weigh the medical evidence.  To the extent that she is asking this court to reweigh the evidence, we cannot do so.  *See Lax*, 489 F.3d at 1084.  We review only the *sufficiency* of the evidence, not its weight, *see id*.; and there was certainly enough evidence to support the ALJ's findings.  Although the evidence may also have

supported contrary findings, "[w]e may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (internal quotation marks and brackets omitted).

In any event, Ms. Oldham's principal focus appears to be a contention that the ALJ failed to comply with 20 C.F.R. § 404.1527. Under that regulation, even when the ALJ need not give "controlling weight" to the opinion of a treating physician (and Ms. Oldham does not argue that the ALJ was required to show such deference to any of the opinions), "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p). We have set forth those factors as

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id*. at 1301 (internal quotation marks omitted).

The ALJ did not violate § 404.1527. He stated that he gave "very little weight" to opinions from various treating physicians regarding her functional capacity, A.R. Vol. I at 33, because those physicians "did not have the

-8-

opportunity to see or did not give weight to contrary evidence showing [Ms. Oldham's] greater functional capacity." *Id.* at 30. This, along with the ALJ's citation to contrary, well-supported medical evidence, satisfies the requirement that the ALJ's decision be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300 (internal quotation marks omitted). That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. Ms. Oldham cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion. For one thing, as the Commissioner has recognized, "[n]ot every factor for weighing opinion evidence will apply in every case." Social Security Ruling 06-03p, *Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, 2006 WL 2329939, at *5 (S.S.A. Aug. 9, 2006). *See Brown v. Barnhart*, 298 F. Supp. 2d 773, 792 (E.D. Wis. 2004) (ALJ need not "articulate" every factor); *cf. Branum v. Barnhart*, 385 F.3d 1268, 1275-76 (10th Cir. 2004) (affirming weight given treating osteopath's opinion although ALJ did not expressly consider all six factors); *White v. Barnhart*, 287 F.3d 903,

908 (10th Cir. 2002) (same with regard to a treating physician). The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. *See* 20 C.F.R. § 404.1527(d)(2). Nothing more was required in this case.

Finally, Ms. Oldham argues that the ALJ did not properly consider the opinion of an examining psychologist, Dr. Madsen. We disagree. Contrary to Ms. Oldham's assertion, the ALJ did mention Dr. Madsen's opinion in his discussion of Ms. Oldham's alleged seizure disorder, noting that, although Dr. Madsen had diagnosed somatoform disorder, that diagnosis was made in relation to Ms. Oldham's allegation of chronic pain and made no mention of seizures. The ALJ generally discounted the opinions of all treating and examining sources who concluded that Ms. Oldham is functionally incapacitated because he found her "allegations, statements and presentations, including those made to treating and examining doctors [to be] highly unreliable." A.R. Vol. I at 28. We do not find any error in the ALJ's failure to name Dr. Madsen specifically in this regard.

The judgment of the district court is AFFIRMED.