**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

STARR ROSE OCEGUERA,

     Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

     Defendant - Appellee.

No. 15-2211
(D.C. No. 1:14-CV-00574-SCY)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **HOLMES**, and **McHUGH**, Circuit Judges.
_____

Starr Rose Oceguera appeals from a decision of the district court affirming the

Commissioner's denial of disability insurance benefits and supplemental security

income. Ms. Oceguera argues that the administrative law judge (ALJ) erred in

(1) discounting the opinion of her treating physician and (2) incorporating the

limitations found by an examining physician into her residual functional capacity

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

(RFC).  Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

## I

Ms. Oceguera applied for disability insurance benefits and supplemental security income in May 2012, claiming she was disabled by epilepsy, lupus, and a high risk pregnancy.  She began seeing Dr. Timothy Klein that October.  In the course of her treatment, Dr. Klein completed a "Long Term Care Medical Assessment" form to be used to obtain state personal care services.  Aplt. App. vol. 6 at 719.  On the form, Dr. Klein indicated Ms. Oceguera suffered from seizure disorder and checked boxes denoting that (1) her status was unstable (a 3 on a 6-point scale); (2) she "needs help" with ambulation, transfer, personal hygiene, and control safety; and (3) she was "mostly disoriented" mentally, behaved inappropriately, avoided others, and attended few planned activities.  *Id.*  He also indicated she was anxious.  Based on this form and another that Ms. Oceguera completed herself, she was approved for seven and a half hours of personal caregiver services per week.

In February 2013, Ms. Oceguera underwent a consultative examination by Dr. Richard Reed, a psychologist.  Dr. Reed observed that she was oriented but had a low level of energy.  "She had a 'poor me' attitude throughout the evaluation and her effort varied considerably from reasonable to no effort given."  Aplt. App. vol. 4 at 478.  Dr. Reed found "no evidence of anxiety during the evaluation," but did note that she was mildly depressed because, according to her, chronic pain prevents her from caring for herself independently.  *Id.*  He observed her thought processes to be

2

"logical and coherent when she put forth the effort to elaborate an answer." *Id*. He found no evidence of delusions or hallucinations and stated that her judgment and insight appeared fair. After a series of intelligence exercises, Dr. Reed estimated her "level of cognitive functioning to be within the low average range of intelligence." *Id*. On this basis, he diagnosed Ms. Oceguera with mood disorder due to general medical condition and dependent traits, and assessed a global assessment of functioning (GAF) score of 58. He then concluded she was mildly limited in her (1) ability to understand and remember simple instructions, (2) ability to maintain attention and concentration, (3) ability to interact appropriately with the general public, (4) ability to interact with co-workers, and (5) ability to be aware of normal hazards and react appropriately. Dr. Reed also concluded she was moderately limited in her (1) ability to understand and remember detailed instructions, (2) ability to carry out instructions, (3) ability to concentrate and persist at basic work tasks, (4) ability to interact with supervisors, (5) ability to adapt appropriately to workplace changes, and (6) ability to use public transportation or travel to unfamiliar places.

After considering this and other evidence, the ALJ issued an unfavorable decision. At step two of the five-step sequential evaluation, she found that Ms. Oceguera suffered from the following severe impairments: seizure disorder, mood disorder, and dependent traits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the five-step process). Finding no impairment to meet the severity of a listed impairment at step three, the ALJ proceeded to determine

3

Ms. Oceguera has the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations:

> she must never climb ladders, ropes, or scaffolds; she must completely avoid unprotected heights and hazardous machinery; she is limited to understanding, remembering, and carrying out simple instructions; she is able to maintain attention and concentration to perform only simple tasks for two hours at a time without requiring redirection to task; she requires work involving no more than occasional change in the routine work setting; and, she is able to interact with supervisors and co-workers on a superficial level.

Aplt. App. vol. 1, Adm. R. at 13. The ALJ determined Ms. Oceguera could not perform any past relevant work at step four and, relying on testimony from a vocational expert, concluded there are jobs that exist in significant numbers in the national economy that she can perform.

In discussing the relevant medical evidence, the ALJ found Ms. Oceguera's allegations were not fully credible because, generally speaking, her seizures were not medically documented, she maintains a "somewhat normal level of daily activity and interaction," she drives despite alleging frequent seizures and barely being able to feed and dress herself, and there was evidence she stopped working for reasons unrelated to her impairments. *Id*. at 16–17. The ALJ discounted Dr. Klein's form responses, finding:

> Dr. Klein apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to accept uncritically as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. This opinion is also inconsistent with the claimant's admitted activities of daily living, which have already been described in this decision.

4

*Id.* at 16. The ALJ gave great weight to Dr. Reed's report. "He assessed functional limitations that are essentially the same as those included in the [RFC] assessment herein and Dr. Reed personally observed and examined the claimant." *Id.* at 15.

Before the district court, Ms. Oceguera challenged the ALJ's handling of both Dr. Klein's and Dr. Reed's opinions. Though the court found the ALJ erred in evaluating Dr. Klein's opinion, it affirmed. The court held that the ALJ did not specifically weigh the evidence and state which of Dr. Klein's opinions she was accepting or rejecting. It noted that Dr. Klein's uncritical reliance on Ms. Oceguera's representations, standing alone, was not a sufficient basis for disregarding his opinion. Nevertheless, the court concluded this error was harmless because the opinion was consistent with the RFC assessment, and Ms. Oceguera did not argue that impairments not accounted for by the RFC affected her functioning. The district court also found that the connection between Dr. Reed's findings and the RFC were "readily apparent." Aplt. App. vo1. 1 at DNM 56.

## II

On appeal, Ms. Oceguera states that the district court was correct in concluding the ALJ improperly applied the treating physician rule, but argues that this error was not harmless. She contends there was a significant inconsistency between Dr. Klein's opinion and the ALJ's RFC findings. She also argues the ALJ failed to incorporate all of the limitations noted in Dr. Reed's opinion into the RFC determination.

5

We review the Commissioner's decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). In doing so, "we neither reweigh the evidence nor substitute our judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

**A**

In analyzing the opinion of a treating physician, "an ALJ first considers whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Allman*, 813 F.3d at 1331 (internal quotation marks omitted). "If so, the ALJ must give the opinion controlling weight." *Id*. If the ALJ decides, however, that "the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). Relevant factors for the ALJ to consider include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotation marks omitted).

Under the regulations and our precedent, the ALJ must state reasons for the weight given to a treating physician's opinion that are "sufficiently specific to make clear to any subsequent reviewers the weight" given and the underlying support for that weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (internal quotation marks omitted). "If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id*. (brackets and internal quotation marks omitted).

We affirm but do so on other grounds. Though the ALJ did not expressly state the weight she gave to Dr. Klein's opinion, her language makes clear that she accorded it little to no weight. In dismissing the opinion, she touched on multiple factors enumerated in *Watkins*. Specifically, she noted the apparent reliance on Ms. Oceguera's allegations and squared that with the unfavorable credibility determination she made elsewhere in the decision. She also contrasted Dr. Klein's findings with Ms. Oceguera's admitted activities of daily living. The ALJ thus considered "the degree to which the physician's opinion is supported by relevant evidence" and "consistency between the opinion and the record as a whole." *See Watkins*, 350 F.3d at 1301. While the ALJ must consider all six factors, *id*. at 1300, we have held that she need not explicitly discuss each of the six factors, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Because we can ascertain the weight given and the reasons for that weight, we think the ALJ was "sufficiently specific" in

7

her discussion of Dr. Klein's opinion. *See id.* We affirm the district court's ultimate conclusion but not its holding that the ALJ erred in evaluating the opinion. Accordingly, we do not address the district court's harmless-error analysis.

**B**

Ms. Oceguera's second claim fares no better. "The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). Ms. Oceguera argues that the ALJ "did not link her RFC finding to evidence of record as required by SSR 96-8p," Opening Br. at 16, and, more specifically, that the ALJ's limitation to understanding, remembering, and carrying out simple instructions does not account for her mental impairment as observed by Dr. Reed. But we can easily see the parallels between Dr. Reed's assessment and the RFC. While it is true that we have expressed doubt whether a restriction to simple work is "sufficient to capture . . . various functionally distinct mental limitations," *Chapo v. Astrue*, 682 F.3d 1285, 1290–91 n.3 (10th Cir. 2012), the ALJ did much more than merely limit Ms. Oceguera to simple work. In accordance with Dr. Reed's opinion, the ALJ also limited Ms. Oceguera's necessary attention and concentration, both temporally and substantively, reduced the amount of change in work routine, and accounted for interpersonal difficulties. Ms. Oceguera does not point us to any other way in which her impairments are not reflected in the RFC finding. We therefore discern no mild or moderate limitation found by Dr. Reed that the ALJ did not incorporate into her RFC determination.

8

## III

The judgment of the district court is affirmed.

Entered for the Court


Jerome A. Holmes
Circuit Judge