FILED
United States Court of Appeals
Tenth Circuit

October 1, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RUBY JEAN BILLS,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 18-1109
(D.C. No. 1:16-CV-03154-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **McKAY** and **MATHESON**, Circuit Judges.
_____

Ruby Jean Bills appeals the district court's judgment affirming the

Commissioner's denial of her applications for social security disability benefits and

supplemental security income. Exercising jurisdiction under 42 U.S.C. § 405(g) and

28 U.S.C. § 1291, we affirm.

_____

    [*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. BACKGROUND

Ms. Bills filed her benefits applications in 2011, alleging she was disabled due to asthma, chronic obstructive pulmonary disorder, anxiety, hip problems, and attention-deficit/hyperactivity disorder. After a hearing, an administrative law judge (ALJ) denied her applications at steps four and five of the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). The Appeals Council affirmed, but the district court remanded because the ALJ failed to explain the weight afforded to the opinion of a consulting examiner, Dr. Mitchell, that Ms. Bills could stand and walk no more than 4 hours per an 8-hour workday and could sit without limitation.

On remand, the ALJ found that, although Ms. Bills had several severe impairments (obesity, scoliosis, asthma/chronic obstructive pulmonary disorder, and gastroesophageal reflux disease), none met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1, commonly referred to as the "Listings," that are so severe as to preclude employment. The ALJ then found that Ms. Bills had the residual functional capacity (RFC) to perform work at the light exertional level subject to several limitations not relevant to this appeal. At step four, the ALJ determined that Ms. Bills could perform her past relevant work as a cashier II. The ALJ therefore denied her applications at step four and did not reach step five. Ms. Bills appealed directly to the district court, *see* 20 C.F.R. § 404.984(a), (d), which affirmed. This appeal followed.

2

## II. DISCUSSION

Our task is to determine whether substantial evidence supports the agency's factual findings and whether the agency applied the correct legal standards. *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). We cannot "reweigh the evidence" or "substitute our judgment for that of the agency." *Id.* (internal quotation marks omitted). We have recognized this is a "deferential appellate standard." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

### A. *Light Work and Ms. Bills's Argument*

Ms. Bills raises one issue: whether substantial evidence supports the ALJ's finding that she was capable of work at the light exertional level. "Light" work involves lifting no more than 20 pounds at a time with frequent lifting or carrying up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). It also "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," with intermittent sitting during the remaining time. SSR 83-10, 1983 WL 31251 (1983), at *6. Ms. Bills claims the record evidence supports that she is limited only to sedentary work, which involves lifting no more than 10 pounds at a time and occasional walking and standing (no more than two hours total), 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 83-10 at *5; and if that is the case, then she is conclusively disabled under the Medical Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2.

3

More specifically, Ms. Bills argues that the ALJ gave inadequate reasons for affording little weight to the opinions of a consulting examiner, Dr. Mitchell, and of a physician who treated her five times, Dr. Burrows, both of whom identified limitations inconsistent with light work. Instead, the ALJ gave more weight to the opinion of an agency nonexamining medical consultant, Dr. Panek, who identified abilities consistent with light work.

Although Ms. Bills may be able to argue the ALJ's reasoning was debatable, she has not shown the ALJ was unreasonable. Under the deferential substantial-evidence standard of review, we affirm.

## B. *Guidelines for Evaluating Opinion Evidence*

The guidelines for evaluating opinion evidence for Ms. Bills's claims are set out in 20 C.F.R. §§ 404.1527 and 416.927.[1] Opinions from examining sources are generally entitled to more weight than opinions from nonexamining sources. §§ 404.1527(c)(1), 416.927(c)(1). And treating-source opinions—those from sources who have seen a claimant "a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment[s]"—are generally entitled to more weight than opinions based on "individual examinations, such as consultative examinations." §§ 404.1527(c)(2)(i), 416.927(c)(2)(i).

An ALJ must give controlling weight to a treating source's opinion on the nature and severity of a claimant's impairment if it is "well-supported by medically

_____

[1] Different guidelines apply to the evaluation of claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

4

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." §§ 404.1527(c)(2), 416.927(c)(2). Absent an opinion entitled to controlling weight, an ALJ must evaluate medical opinions using the following factors drawn from §§ 404.1527(c) and 416.927(c):

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotation marks omitted); *see* §§ 404.1527(c), 416.927(c) (explaining that unless a treating-source opinion is given controlling weight, the agency will consider these factors in deciding the weight to give any medical opinion). An ALJ is not required to discuss all of these factors but must provide "good reasons" for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); §§ 404.1527(c)(2), 416.927(c)(2).

## C. *The Opinion Evidence*

### 1. **Dr. Mitchell's Opinion**

The consulting examiner, Dr. Mitchell, saw Ms. Bills in 2010. The ALJ gave multiple reasons for rejecting Dr. Mitchell's opinion that Ms. Bills could stand or

walk only about 4 hours in an 8-hour workday.[2]  The ALJ found that the opinion was not consistent with Dr. Mitchell's own recorded observations during the examination, which the ALJ summarized as follows:  Ms. Bills "had only a mildly antalgic gait"; "sat comfortably during the examination without pain-mitigating movements, did not appear uncomfortable getting on and off the examination table or removing her shoes, and arose spontaneously and unaided from a seated position without discernible discomfort"; "could stand on her heels and toes, did not use an assistive device, and had no discernible discomfort with normal ranges of motion of her cervical and dorsolumbar spine"; and "had full strength in all extremities."  Aplt. App., Vol. 2 at 480–81.  The ALJ also found that the opinion was inconsistent with Ms. Bills's statement to a sleep consultant in 2013 that she "essentially walked everywhere most of the time and she got good exercise," *id.* at 481 (discussing *id.* at 383), and with a 2015 treatment note from Dr. Burrows showing Ms. Bills "walked normally," *id.* (discussing Dr. Burrows's finding that she had "normal gait and station," *id.* at 712).  Finally, the ALJ noted that Dr. Mitchell had examined Ms. Bills only once and therefore lacked "a longitudinal treatment history" with her.  *Id.*

Ms. Bills questions only two of these reasons.  She first argues that it was unreasonable for the ALJ to rely on the fact that she could sit comfortably during the

---

[2] Although the ALJ said she gave "limited weight" to Dr. Mitchell's opinion, Aplt. App., Vol. 2 at 480, she appears to have rejected the opinion with respect to Ms. Bills's ability to stand or walk, which was inconsistent with the ALJ's RFC finding.  What "limited weight" the ALJ afforded Dr. Mitchell's opinion appears to concern Ms. Bills's ability to bend, squat, crouch, and stoop only occasionally, all of which was made part of the ALJ's RFC.

examination because Dr. Mitchell's opinion was that she could sit for an unlimited amount of time. We agree that this was not a good reason for discounting Dr. Mitchell's opinion regarding Ms. Bills's ability to stand and walk. This misstep, however, is not dispositive because substantial evidence still supports the ALJ's rejection of Dr. Mitchell's opinion of Ms. Bills's standing and walking abilities.

Ms. Bills's other contention is that the ALJ's reliance on the lack of a longitudinal treatment relationship to discount Dr. Mitchell's opinion was inconsistent with the ALJ's attributing greater weight to the opinion of the nonexamining consultant, Dr. Panek, who never saw Ms. Bills and therefore similarly lacked a longitudinal relationship with her. As noted, the length of the relationship between a medical source and a claimant is only one legitimate factor to consider in evaluating medical-source opinion evidence. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). It was reasonable here for the ALJ to rely on the fact that Dr. Mitchell saw Ms. Bills only once. Moreover, that encounter occurred in 2011, very early in the relevant time period, which stretched from the amended onset date in 2010 to the date of the ALJ's decision in 2016. In contrast, Dr. Panek reviewed medical evidence from 2010 and 2011, *see id.* at 369–71, which, although also covering an early part of the time frame, presented at least a partial longitudinal picture of Ms. Bills's functional capacity.

Ms. Bills does not challenge any of the other reasons the ALJ gave for rejecting Dr. Mitchell's opinion regarding her ability to stand and walk other than to contend that the opinion was consistent with three of Dr. Mitchell's examination

7

findings: a "mildly antalgic gait," "mild scoliosis," and "the absence or reduction of all [Ms. Bills's] reflexes." Aplt. Opening Br. at 39. But assuming those findings, which the ALJ noted, are consistent with Dr. Mitchell's opinion that Ms. Bills could stand or walk only 4 hours in an 8-hour workday, the ALJ identified evidence that was not consistent with that degree of limitation—Dr. Mitchell's other findings at the consultative exam, the later evidence that Ms. Bills "had normal station and gait," Aplt. App., Vol. 2 at 712, and her statement that she walked most "everywhere" and "got good exercise," *id.* at 383. Under the substantial evidence standard, "we may not displace the agency's choice between two fairly conflicting views," *Oldham*, 509 F.3d at 1258 (brackets and internal quotation marks omitted). The ALJ's rejection of Dr. Mitchell's opinion that Ms. Bills could stand or walk only 4 hours in an 8-hour workday withstands her challenge on appeal.

2. **Dr. Burrows's Opinion**

Dr. Burrows, who saw Ms. Bills four times in late 2015 and once in April 2016 for complaints of esophageal burning, completed a gastritis medical assessment form in July 2016. The ALJ gave Dr. Burrows's opinion "partial weight." Aplt. App., Vol. 2 at 480. The ALJ (1) rejected Dr. Burrows's opinion that she could lift and carry 10 pounds rarely and never more than 10 pounds, could only walk two blocks, and needed to alternate sitting and standing and lie down after standing, *id.* at 837, 839—all of which is inconsistent with light work—but (2) accepted Dr. Burrows's opinion that she could stand and walk at least 6 hours in an 8-hour workday, *id.* at 837—which is consistent with light work.

8

Ms. Bills claims that the ALJ erred in relying on a lack of a longitudinal treatment history in rejecting part of Dr. Burrows's opinion because he examined her on five occasions. Five visits over eight months would typically be sufficient to establish a longitudinal relationship such that Dr. Burrows could be considered a treating physician. And his opinions would therefore be entitled to controlling weight if they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and were "not inconsistent with the other substantial evidence in [the] case record." §§ 404.1527(c)(2), 416.927(c)(2). But the ALJ found that Dr. Burrows's opinions were inconsistent with (1) his August 2015 treatment notes showing that Ms. Bills "walked normally, had normal motor strength and tone, did not have musculoskeletal tenderness, and had normal movement in all extremities," Aplt. App., Vol. 2 at 480 (discussing *id.* at 712), and (2) his April 2016 treatment notes in which "he noted limited objective findings and suggested dietary changes, fluid consumption, and using Pepto-Bismol periodically," *id.* (discussing *id.* at 705–06).

Ms. Bills has not challenged these reasons or any of the other reasons the ALJ gave for rejecting Dr. Burrows's lifting and sit/stand limitations. The ALJ also noted that Dr. Burrows treated Ms. Bills for gastroesophageal reflux disease and did not indicate whether this disease caused the limitations he recommended (abdominal pain was the only symptom Dr. Burrows attributed to the disease, *id.* at 836). And the ALJ doubted Dr. Burrows's lifting and sit/stand limitations because (1) his opinion that Ms. Bills would need nine restroom breaks a day lacked support, and (2) there

9

was a discrepancy between Dr. Burrows's notation that he began seeing Ms. Bills once a year in 2013 and the record showing he first saw her in August 2015 and then four more times over the ensuing eight months.

The ALJ gave "specific, legitimate reasons" for rejecting Dr. Burrows's lifting and sit/stand limitations, *Watkins*, 350 F.3d at 1301 (internal quotation marks omitted), based on the regulatory factors concerning the treatment provided, the lack of evidentiary support, and inconsistency with other record evidence. Ms. Bills has not shown the ALJ's rejection of those limitations lacks a substantial-evidence basis.

3. **Dr. Panek's Opinions**

Dr. Panek, the agency nonexamining medical consultant, reviewed all of the medical records in 2012. Consistent with light work, Dr. Panek said Ms. Bills could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday. *See* Aplt. App., Vol. 1 at 99–101; *id.*, Vol. 2 at 369–71. The ALJ gave "great weight" to these opinions because they were "consistent with the record as a whole," including Dr. Burrows's August 2015 treatment note. *Id.*, Vol. 2 at 481.

Ms. Bills does not challenge these reasons other than to argue that the opinions of Drs. Mitchell and Burrows regarding her abilities to stand, walk, lift, and carry were entitled to more weight. But we have upheld the ALJ's rejection of those opinions under the deferential substantial evidence standard, which does not allow us to reweigh the evidence or substitute our judgment for the ALJ's. Accordingly, it was permissible for the ALJ to rely on Dr. Panek's opinion. *See* SSR 96-6P,

10

1996 WL 374180 (July 2, 1996), at *3 ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."). Lacking any argument from Ms. Bills questioning the ALJ's reliance on Dr. Panek's opinion, we conclude that substantial evidence supports the ALJ's RFC for light work.

## III.  CONCLUSION

The district court's judgment is affirmed.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge