FILED
United States Court of Appeals
Tenth Circuit

October 21, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ANDREW RAZO,

     Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

     Defendant - Appellee.

No. 15-1495
(D.C. No. 1:14-CV-00945-NYW)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HARTZ** and **PHILLIPS**, Circuit Judges.
_____

Andrew Razo, proceeding on appeal pro se, seeks reversal of the district

court's judgment upholding the decision of an administrative law judge (ALJ) to

deny his application for social-security disability benefits and supplemental-security

income-benefits (SSI). We have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C.

§ 405(g). We affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    BACKGROUND

Mr. Razo, who was born in 1965, filed for disability benefits and SSI, claiming he became disabled on August 31, 2005 due to numerous physical and mental impairments, including upper-extremity limitations, psychological impairments, limitations after recovery from numerous surgeries, morbid obesity, and pain.  In 2010, the ALJ issued a decision, which was remanded by the Appeals Council for further proceedings.  Thereafter, the ALJ received additional medical records and held four more hearings.  On November 9, 2012, the ALJ issued an unfavorable decision for Mr. Razo, concluding that despite Mr. Razo's inability to perform his past relevant work he still had a sufficient residual functional capacity (RFC) to perform other work that existed in substantial numbers in the national economy.[1]  Accordingly, the ALJ denied benefits at step five of the five-step sequential evaluation process.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the five-step framework for determining disability).  The Appeals Council denied review, and the district court affirmed.

## II.    DISCUSSION

"Under the Social Security Act, a claimant is disabled if [he] is unable to do any substantial gainful activity by reason of any medically determinable physical or

---

[1] "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."  SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996).  It "considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms."  *Id.* at *1.

mental impairment which can be expected to last for a continuous period of not less than 12 months." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (ellipsis and internal quotation marks omitted). "We review the district court's decision de novo and independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal quotation marks omitted). We examine the record as a whole, but we do not reweigh the evidence. *Id.* We also do not "substitute our judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

We have liberally construed Mr. Razo's pro se filings. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). We do not, however, "take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.* Moreover, "pro se parties [must] follow the same rules of procedure that govern other litigants." *Id.* (internal quotation marks omitted).

On appeal Mr. Razo asserts that (1) the ALJ failed to give controlling weight to the opinion of his treating physician, (2) the ALJ failed to include in the RFC his

nonexertional impairments, and (3) the ALJ erred in relying on the vocational

expert's (VE's) opinion that there existed jobs he could perform.[2]

**A. Weight Assigned to Physicians' Opinions**

In the RFC assessment, the ALJ found that Mr. Razo could "frequently use his

upper extremities for work activity." R. Vol. 2, at 114. Mr. Razo contends the ALJ

impermissibly failed to give controlling weight to the opinion of his treating

physician, Dr. Mitchell Fremling, concerning his upper-extremity impairments, and

improperly gave substantial weight to the opinion of non-examining consultant

Dr. Gerald Greenberg.

Dr. Fremling treated Mr. Razo for upper-extremity problems, with the

treatment including surgery on both arms. In October 2009, three months after

decompression surgery, Dr. Fremling prepared a medical-source statement of ability

to do work-related physical activities, stating that Mr. Razo was limited in his ability

to lift and carry less than ten pounds frequently, to reach less than five pounds for

less than five minutes per hour, to handle less than ten pounds, to finger less than 20

minutes per hour, and to push or pull less than ten pounds for less than 20 minutes

per hour. In 2012, Dr. Fremling chronicled Mr. Razo's complaints concerning his

upper extremities, noting that he had "treated [Mr. Razo] for multiple compression

---

[2] Mr. Razo relies, in part, on the ALJ's findings in the 2010 decision. But because the Appeals Council remanded that decision for further findings and a new determination, it was not final. Our review is limited to the final agency decision— the decision issued November 9, 2012. *See* 42 U.S.C. § 405(g) (providing for review of "any *final* decision of the Commissioner of Social Security" (emphasis added)).

4

neuropathies between April 12, 2010 and [February 13, 2012]." R. Supp. Vol. 4, at 1461.

Dr. Greenberg reviewed Mr. Razo's medical records and testified at an ALJ hearing. Dr. Greenberg opined that Mr. Razo was capable of a range of sedentary work, with limitations of lifting and carrying up to ten pounds occasionally, and walking about one to two hours at a time for a total of four hours in an eight-hour workday. He assigned no limitation to sitting or using the left arm and hand. In his opinion, Mr. Razo could frequently use his right arm and fingers. Dr. Greenberg noted that Mr. Razo had undergone numerous surgeries, but stated that the recovery periods would last from a couple of weeks to a couple of months, and that none would make him unable to work for a year.

Mr. Razo also cites to a neurological consultative examination performed by Dr. Kristen Graesser in February 2010. Dr. Graesser prepared a medical-source statement of ability to do work-related physical activities, limiting Mr. Razo to frequent reaching, to occasional push-pull, and to no handling or fingering with his right hand (with no limitation for his left hand). Dr. Graesser stated that Mr. Razo could lift up to 50 pounds frequently and up to 100 pounds occasionally, could frequently carry 20 pounds and occasionally carry 21 to 50 pounds, could sit for eight hours and stand for two hours during an eight-hour workday, and could walk for one hour at a time for a total of two hours during an eight-hour workday.

"A treating physician's opinion must be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and

5

is not inconsistent with other substantial evidence in the record." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014) (internal quotation marks omitted). If an ALJ does not give a treating physician's opinion controlling weight, "the ALJ must explain what weight, if any, was assigned to the opinion using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." *Id.* at 1176-77 (internal quotation marks omitted). The ALJ is required to state the reasons for the weight he assigns the opinion and if he "rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* at 1177 (internal quotation marks omitted). "When analyzing a treating physician's opinion, an ALJ first considers whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Allman v. Colvin*, 813 F.3d 1326, 1331 (10th Cir. 2016) (internal quotation marks omitted). If the opinion is supported and consistent, the ALJ must give it controlling weight. *Id.* If, on the other hand, "the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* (internal quotation marks omitted).

The ALJ assigned little weight to Dr. Fremling's opinion because it was inconsistent with the other medical opinions and with the evidence as a whole. In addition, Dr. Fremling's October 2009 assessment came three months after Mr. Razo's July 2009 surgery and conflicted with Dr. Graesser's February 2010 opinion that Mr. Razo had a greater RFC. The ALJ assigned substantial weight to Dr.

6

Graesser's opinion. The ALJ assigned Dr. Greenberg's opinion the most weight because Dr. Greenberg was familiar with the applicable rules and regulations and because his opinion was consistent with the medical evidence as a whole. Dr. Greenberg explained that the limitations Dr. Fremling identified were not supported by the record. In addition, Dr. Greenberg opined that those limitations would not last beyond a short period after Mr. Razo's surgeries and would not last for a minimum of twelve months, as required to establish disability. *See Wilson*, 602 F.3d at 1140 (disability requires that claimant be unable to engage in substantial gainful activity for at least twelve months). Similarly, to the extent Dr. Graesser's opinion differed from Dr. Greenberg's regarding Mr. Razo's upper-extremity limitations, Dr. Greenberg explained that Dr. Graesser's assessment was made several years before and Mr. Razo had undergone several surgeries since then.

Mr. Razo argues that, in making these assignments, the ALJ failed to apply all of the criteria for evaluating medical opinions set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). But the ALJ was not required "to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). And as the ALJ observed, even though Dr. Fremling continued to treat Mr. Razo after the October 2009 assessment, he did not proffer an opinion on future restrictions for Mr. Razo's upper extremities or indicate that future surgery was planned. Rather, Dr. Fremling noted that he would treat Mr. Razo with steroid injections.

7

The ALJ followed the proper procedure for weighting the medical opinions. Contrary to Mr. Razo's claim, the ALJ did not "pick and choose which aspects of an uncontradicted medical opinion to [accept]," *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). Rather, the ALJ "provided good reasons in his decision for the weight he gave to the treating source['s] opinion[]. Nothing more was required in this case." *Oldham*, 509 F.3d at 1258 (citation omitted).[3]

## B. Nonexertional Impairments

Mr. Razo asserts the ALJ failed to consider his impairments to social functioning, his morbid obesity and pain, and his need to take time off for medical appointments.

Mr. Razo relies on the testimony of Dr. Margaret Moore, an impartial psychological expert, whose opinion the ALJ gave significant weight. Dr. Moore testified that Mr. Razo had moderate limitations "in the social realm primarily," but that he had the ability to understand, remember, and carry out all types of instructions and deal with changes in a routine work setting. R. Vol. 2, at 211. She also opined that he would have some difficulty accepting instructions if confronted with his

---

[3] In his reply brief, Mr. Razo expressed a concern about the ALJ's remarks at the February 16, 2012, hearing, suggesting that the medical witnesses were so limited in their medical expertise that the ALJ had to halt the hearing. The certified administrative transcript of the hearing reveals that the ALJ's comment concerned Dr. William Rack, an impartial medical expert, who reviewed all of the medical evidence and testified at the February 16 hearing. Dr. Rack declined to express an opinion on Mr. Razo's capabilities. Consequently, the ALJ obtained Dr. Greenberg's medical opinion, as discussed herein.

8

substance abuse, and would have moderate limitations in dealing with the public and supervisors.

Mr. Razo contends that Dr. Moore's testimony about his substance abuse could be interpreted to mean that he had significant limitations to his social functioning when he was abusing opiates and moderate limitations when he was not. Either way, he argues, the ALJ was required to include some limitations in his RFC.

The ALJ acknowledged the limitations to social functioning identified by Dr. Moore, but determined that they were no longer applicable because Mr. Razo had overcome his substance-abuse problem (with his opiate dependence in full remission since at least June 2011) and had "not indicated any difficulty getting along with others." *Id.* at 124. In addition, even though Dr. Moore stated Mr. Razo could remember and carry out all types of instructions, the ALJ limited the RFC to understanding, remembering, and carrying out only simple instructions. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[I]f a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit."). We conclude that the ALJ properly considered Mr. Razo's limitations to social functioning.

Mr. Razo also asserts the ALJ failed to consider his morbid obesity in formulating the RFC. As the ALJ recognized, Social Security Ruling 02-1p requires a claimant's obesity to be factored into the RFC. SSR 02-1p, 2002 WL 34686281, at *1 (Sept. 12, 2002). The ALJ observed that none of the medical opinions specifically

9

addressed the impact of Mr. Razo's obesity on his other impairments. Nevertheless, the ALJ stated, Mr. Razo's obesity would have been obvious to all of the medical sources, who would be expected to include the effects of obesity in the limitations indicated. The ramifications of obesity are subsumed within the discussion of Mr. Razo's other medical conditions. Furthermore, Mr. Razo does not discuss or cite to medical or other evidence to support his claim that his obesity was disabling. *See Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) (rejecting claimant's assertions that ALJ failed to properly consider her obesity, noting that a medical report took into account her obesity and claimant did not cite to medical evidence supporting her position). Therefore, we conclude that the factual record does not support Mr. Razo's claim that the ALJ failed to consider the effect of his obesity, either alone or in combination with other impairments, in the RFC assessment.

Mr. Razo next contends the ALJ failed to evaluate his claim of disabling pain as required by *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). Under *Luna*, an ALJ evaluates a claimant's complaints of disabling pain as follows:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166–67 (10th Cir. 2012) (citing *Luna*, 834 F.2d at 163–64).

The ALJ considered Mr. Razo's complaints of pain. Even though he did not cite *Luna*, the ALJ stated the *Luna* paradigm, R. Vol. 2, at 114, and discussed

10

Mr. Razo's testimony and the objective evidence of his various physical and mental impairments. After finding that his medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, the ALJ evaluated Mr. Razo's pain complaints and concluded that they were not credible to the extent they were inconsistent with the RFC assessment. Mr. Razo argues that the ALJ improperly failed to consider the amounts of opiate pain relievers he was prescribed, even after it was established that he had abused them. According to Mr. Razo, the use of such pain relievers demonstrates he was in severe pain.

The ALJ thoroughly discussed Mr. Razo's history of drug abuse, including the evidence that he no longer had a problem with drug abuse. Contrary to Mr. Razo's assertion on appeal, the ALJ found that Mr. Razo's drug-seeking behavior actually diminished his credibility concerning his pain complaints, rather than bolstered it. We conclude that the ALJ properly evaluated the evidence concerning Mr. Razo's complaints of disabling pain and that substantial evidence supports the determination that Mr. Razo's pain was not disabling. "[D]isability requires more than mere inability to work without pain." *Brown v. Bowen*, 801 F.2d 361, 362 (10th Cir. 1986).

Mr. Razo also argues that the ALJ failed to consider his need to take time off work for medical appointments. Relying on his own testimony, he asserts he must attend a medical or therapeutic appointment three times per week, which would preclude gainful employment. He does not, however, attempt to substantiate his claim with the medical records. We decline to search the voluminous administrative

11

record to ascertain how many appointments each week Mr. Razo could be expected to attend. We note, however, that following surgery in 2009, Dr. Fremling indicated that Mr. Razo would need to miss work at least three times *per month* for medical appointments. Even if this were necessary following surgery, it does not mean Mr. Razo would be required to attend follow-up appointments indefinitely, nor does it mean he could not perform work on a regular and continuing basis. To be able to perform work on a "regular and continuing basis," *see* 20 C.F.R. § 404.1545(b) & (c), one need not keep a particular work schedule. Rather, work "on a regular and continuing basis . . . means "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1, 2 (July 2, 1996). Therefore, the ALJ did not err in declining to include this limitation in the RFC assessment.

## C. Vocational Expert's Testimony

Mr. Razo contends the ALJ erred in relying on the VE's opinion at step five that there existed jobs he could perform. "[T]he burden of proof shifts to the Commissioner at step five to show that the claimant retains a sufficient RFC to perform work in the national economy, given [his] age, education, and work experience." *Wells v. Colvin*, 727 F.3d 1061, 1064 n.1 (10th Cir. 2013).

The ALJ determined that Mr. Razo could not perform his past work as a municipal maintenance worker, but that he could perform the jobs of small-products assembler, addresser, and final assembler—jobs that exist in significant numbers in the national economy. Mr. Razo claims generally that the ALJ failed to reconcile a conflict between the VE's testimony and the Dictionary of Occupational Titles

12

(DOT), as required by Social Security Ruling 00-4p. *See* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). On the contrary, the ALJ ascertained that the VE's testimony about jobs suitable for Mr. Razo did not differ from the DOT and clarified that the VE's answers not covered in the DOT were based on her education, training, and experience as a vocational-rehabilitation counselor.

Mr. Razo also alleges that the hypothetical question presented to the VE did not include all of his impairments. A hypothetical question posed to a VE is sufficient if "it contained all of the limitations found to exist by the ALJ." *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000). Mr. Razo contends that the ALJ limited him to sedentary work, yet his hypothetical question to the VE included an ability to "stand and walk no more than one hour at a time for no more than a total of 4 hours during an 8-hour workday." R. Vol. 2, at 114. Mr. Razo argues this capability is not compatible with a limitation to sedentary work.

The ALJ did not determine that Mr. Razo was limited to sedentary work. Rather, the ALJ found him limited to modified sedentary work including the stand/walk limitation noted above. Thus, the ALJ's hypothetical question was sufficient because it contained all of the limitations found to exist by the ALJ. *See Barnett*, 231 F.3d at 690.

Mr. Razo next complains that the jobs identified as appropriate for him required frequent manipulation with the upper extremities. He contends the evidence showed he could not perform such work. This claim merely restates his prior argument that the ALJ should have credited the medical evidence indicating he could

13

not use his upper extremities. We reject this argument for the reasons discussed above.

### D. Post Hoc Application of Grids

Finally, Mr. Razo argues that if the Medical-Vocational Guidelines (the "grids"), *see* 20 C.F.R. pt. 404, subpt. P, app. 2, were to be applied as of his birthday three years after the ALJ's decision, he would be deemed disabled. But this court does not determine disability in the first instance; rather, our function is to review the Commissioner's determination. *See* 42 U.S.C. § 405(b) (directing the Commissioner to make findings of fact and determinations of disability); *id.* § 405(g) (providing judicial review of a "final decision of the Commissioner").

### III.  CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court

Gregory A. Phillips
Circuit Judge

14